1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BRIDGET K. COLLERAN,                        )
                                             )
                     Plaintiff,              )          Case No. 2:14-cv-1736-GMN-GWF
                                             )
vs.                                          )          **REPORT AND**
                                             )          **RECOMMENDATION**
                                             )
CAROLYN W. COLVIN, Acting                    )
Commissioner of Social Security,             )          Motion for Reversal and/or Remand
                     Defendant.              )          (ECF No. 16)
_____)          Cross-Motion to Affirm (ECF No. 19)

13        This case involves judicial review of administrative action by the Commissioner of Social

14   Security denying Plaintiff Bridget Colleran's claim for disability benefits under Title II and Title XVI

15   of the Social Security Act.  Plaintiff's Complaint (ECF No. 3) was filed on December 19, 2014.

16   Defendant's Answer (ECF No. 11) was filed on February 23, 2015, as was a certified copy of the

17   Administrative Record (the "AR").  (*See* ECF No. 12).  This matter has been submitted to the

18   undersigned United States Magistrate Judge for Findings and Recommendations on Plaintiff's Motion

19   for Reversal and/or Remand (ECF No. 16), filed on March 16, 2015, and the Commissioner's Cross-

20   Motion to Affirm and Opposition to Plaintiff's Motion for Reversal and/or Remand (ECF No. 19),

21   filed on May 20, 2015.  Plaintiff did not file a reply brief.

22                                          **BACKGROUND**

23        **A.    Procedural History**

24        On October 27, 2010, Plaintiff filed a Title II application for a period of disability and

25   disability insurance benefits.  Plaintiff also filed a Title XVI application for supplemental security

26   income on September 19, 2012.  In both applications, Plaintiff alleged that her disability began on

27   September 11, 2009.  AR 36.  The Social Security Administration denied Plaintiff's claims on July 28,

28   2011.  AR 99.  Plaintiff then filed for reconsideration of both claims, which were denied on December

12, 2011.  AR 110.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and testified at a hearing on November 28, 2012.  AR 63-88.  Vocational Expert Bernard Preston also testified at the hearing.  AR 83-88.  The ALJ determined that Plaintiff was not disabled from September 11, 2009 through December 21, 2012.  AR 36-43.  Plaintiff appealed the decision of the ALJ to the Appeals Council on February 11, 2013.  AR 25-26.  The Appeals Council denied Plaintiff's request for review on August 22, 2014.  AR 1-7.  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned magistrate judge for a report of findings and recommendations pursuant to 28 U.S.C. §§ 636 (b)(1)(B) and (C).

### B.      Factual Background

Plaintiff Bridget Colleran was born on January 7, 1957.  AR 177.  She is 5'6" tall and weighed 190 pounds in December 2010.  AR 181.  Plaintiff completed one year of college in 1976.  AR 181.  At the time of the hearing she lived with her daughter, son-in-law and their son.  AR 67.

### 1.  Plaintiff's Disability/Work History Reports and Hearing Testimony

In her initial December 2010 disability report, Plaintiff listed fibromyalgia, back problems, spinal arthritis, and anxiety as her disabling conditions.  AR 181.  She stated that she stopped working on September 11, 2009 because of her conditions.  AR 181.  Plaintiff reported that from 1998 to 2001 she worked as a manager of a dog grooming store and from 2001 through 2009 she worked as an office manager for a garbage disposal company.  AR 182.  She was currently taking Norco, Paxil, and Soma to help with her pain and anxiety.  AR 183.  Plaintiff reported that she treated with Dr. Zahid Hamid from 2004 to 2006, Dr. Shiranee Jayasooriya from 2006 to February 2010, and then began seeing Dr. Brian Lee in April 2010.  AR 184-185.

Plaintiff submitted a function report in February 2011.  AR  205-212.  She reported that she had extremely limited range of motion, had difficulty with tasks involving her hands and arms, as well as with tasks involving lifting, typing, and sitting for long periods of time.  Walking also caused her to have frequent bouts of severe pain and swelling in her left shoulder and neck.  AR 205.  She had difficulty sleeping because laying down for too long would cause her neck to become stiff and the resulting pain would be severe.  AR 206.  She no longer wore clothes with a lot of buttons or shirts that pulled over her head because of difficulty in raising her arms.  She also had problems washing and

2

curling her hair.  AR 206.  She was able to cook meals and do some cleaning and laundry.  AR 207. Because of neck pain she could no longer drive an automobile or sit through a movie.  Nor could she sit and read a book for as long as she used to.  AR 209.  If she felt well, she could walk for about a half an hour before needing to stop and rest.  If she was in pain, she could only walk for about 10 minutes and then needed to rest for about 10 to 20 minutes.  AR 210.  Plaintiff reported that she was prescribed a soft neck brace in 1997 and used it while sleeping, sitting, and walking to keep her neck straight. AR 211.[1]

Plaintiff submitted a second disability report in August 2011 in which she stated that she was in a car accident on May 9, 2011 that caused increased pain in her shoulders, neck, and lower back. The pain also extended into her legs and caused her to fall.  AR 221.  She experienced headaches due to whiplash and her ability to use her arms had decreased even more.  AR 221.  Following the car accident, doctors found a lump in her liver.  They also confirmed that she had spinal arthritis and that her bone density was very low.  It was suggested that she could have scoliosis.  AR 222.  Plaintiff treated with Don Gregory, M.D. for pain caused by the accident and was referred to James Warner for physical therapy.  AR 222-223.  She took Praxil, Xanax, Soma, and Oxycodone for pain and anxiety. AR 224.  She bought a walker, as recommended, and stated that she could not participate in vocational rehabilitation due to pain.  AR 226.  Plaintiff filed a third disability report in December 2011.  AR 239-243.  She stated that her herniated discs had gotten worse and she was awaiting results of new scans to see if she had additional herniated discs.  AR 239.  She did not report any other changes since her prior disability report.  She was taking Norco, Oxycodone, Xanax, and Paxil which were prescribed by Dr. Brian Lee.  AR 248.

Plaintiff testified at the November 28, 2012 hearing that her last job was as an office manager for Republic Services where she worked for 10 years.  AR 66.  This job required her to take care of 250 drivers, the office staff, draft letters, make orders, and perform any other task generally delegated to an office manager.  She experienced extreme pain in her neck and arms due to the amount of

---

[1] Plaintiff's daughter, Danielle Lafon, also submitted a function report on her mother's behalf in February 2011.  Ms. Lafon's report largely corroborated Plaintiff's report.  AR 213-220.

walking and typing required by the job.  AR 66.  Plaintiff was laid-off by Republic Services in September 2009.  AR 67.  She testified that prior to being laid-off, she would have to leave work early approximately two days every week.  AR 70.  She  believed that her work absences played a role in her termination.  AR 70.  Prior to working for Republic Services, Plaintiff managed her brother's dog grooming shop for two years.  She also attempted to return to work as a casino dealer.  AR 67.

Plaintiff testified that during a typical day she would sleep, eat, read, and watch TV.  AR 67-68.  She was unable to cook or clean as much as she would like due to her pain.  She would only go to the store with her daughter and would use one of the electric carts.  AR 68.  She did not drive because of neck pain and had allowed her driver's license to expire.  AR 69.  Her medications caused her to become nauseous, dizzy and very tired.  Plaintiff testified that the pain in her neck, back, and arms limited her the most.  AR 71.  These problems had been present since 2009.  The 2011 automobile accident paralyzed her for three months because of pain in her middle and lower back, and shooting pain in her legs.  AR 71.  She had pain in her neck seven days a week that felt like someone was constantly throwing knives in her.  AR 71-72.  She also suffered from spinal headaches when using her arms too often.  AR 72.  The headaches would occur seven days a week and could last up to 24 hours at a time.  AR 77-78.  She took Tylenol and Norco for her headaches.  She was unable to see when the headaches were extremely severe.  AR 78.  Plaintiff hoped to be able to return to work if she could get surgery, but was not sure if she would be able to.  AR 73.

Plaintiff testified that even with pain medication her pain was at a level eight on a ten point scale every day.  AR 73.  She had fatigue every day because of fibromyalgia and had to lay down for four to five hours between 8:00 A.M. and 5:00 P.M.  AR 74.  She rated the level of her fatigue as an eight out of ten.  AR 75.  She had problems sitting, standing, and walking due to pain and the fact that she "lock[s] up a lot."  AR 75.  She constantly had to move around and shift positions to help alleviate her pain.  She could only sit for about 20 minutes before she would have to get up.  She could sit for a total of two hours in an eight hour work day.  AR 76.  She could stand for about 15 minutes before having to sit down and she could stand for a total of one hour in an eight hour work day.  AR 76.  She could walk for about 20 minutes before having to get off her feet.  She could walk for a total of two hours in an eight hour work day.  AR 77.  She had fallen down because of the way she had to walk.

4

1    AR 81.  She was unable to lift a gallon of milk.  AR 77.

2         Plaintiff testified that she felt depressed on occasion because she could not be as active as she

3    once was.  AR 79.  She had crying spells and feelings of guilt, worthlessness and isolation.  She would

4    withdraw from others.  AR 79.  She had problems sleeping due to her pain and the anxiety.  AR 81.

5    She had anxiety attacks three times a week and took Xanax to relieve her symptoms.  AR 82.  She

6    testified that anxiety would be an issue for her at work because Xanax caused her to become "loopy."

7    AR 82.

8         Plaintiff described her fibromyalgia symptoms as feeling like someone was throwing a knife

9    into her; or a "pins and needles" sensation.  AR 79.  She was unable to feel her muscles at times and

10   the pain was so bad that she could not move.  She also had muscles spasms in her neck and lower

11   back.  AR 79.  She also recently began having problems with her hip and Dr. Lee advised her to go to

12   UMC to have testing done.  She did not get any tests.  AR 80.  Dr. Coppel performed epidural

13   injections in her low back pain, but she did not receive any benefit from them.  AR 80-81.  Plaintiff

14   testified that overall she had five bad days out of every seven because of her disabilities.  AR 82.

15                  **2.    Vocational Expert's Testimony**

16        Vocational Expert ("VE") Bernard Preston testified that Plaintiff's past history as an office

17   manager for Republic Services was classified as sedentary work under the Dictionary of Occupational

18   Titles ("DOT"), but was light work as performed by Plaintiff.  Her past work as collection clerk was

19   sedentary; her past work as  21 dealer was light work; and her work as an office manager of dog

20   grooming establishment was light work.  AR 83.  The ALJ asked the VE the following hypothetical

21   question:

22        [L]et's assume you had a hypothetical woman who is a person closely
          approaching advanced age with more than a high school education and
23        same work history as Ms. Colleran, with - - who is status post cervical
          spine fusion with treatment for fibromyalgia, hypertension, status post
24        myocardial infarction, and degenerative changes to the lumbrosacral
          spine, and obesity. And if were (sic) to assume that these impairments
25        may result in limiting that hypothetical woman to work at the light
          exertional level, as defined by the *DOT* and the Regulations, with
26        occasional climbing of stairs or ramps, no climbing of ladders, ropes or
          scaffolds, frequent balancing and stooping. . . . Occasional kneeling,
27        crouching or crawling. Overhead reaching limited to frequent with both
          arms. Only occasional exposure to airborne pollutants or temperature
28        extremes. No exposure to hazards such as heights or dangerous moving

                                      5

machinery. Well, if those were the limitations, would that hypothetical woman be able to perform any of Ms. Colleran's past work?

AR 84.

The VE testified that the hypothetical person would be able to perform all of Plaintiff's past relevant work. AR 84. The ALJ asked whether those jobs would still be available if the hypothetical person was limited to sedentary work. AR 84-85. The VE testified that all of the jobs would be eliminated except for the collection clerk. AR 85. The ALJ asked if the hypothetical person would be able to maintain competitive employment if she were likely to be absent from work more than two days per month. The VE testified that the hypothetical person could not maintain competitive employment with that level of absences. AR 86.

Plaintiff's counsel asked whether the hypothetical person would be able to perform any past relevant work based on the following limitations:

> Sit at one time for 40 minutes, two hours total, throughout an eight-hour day; stand for 20 minutes at a time, two hours total, throughout an eight-hour day; walk for five minutes at a time, 40 minutes total, throughout an eight-hour day. [and] The hypothetical individual would need to lay down or recline up to two hours throughout an eight-hour day.

> [O]nly be able to sit for 20 minutes at a time, two hours total, throughout an eight-hour day; stand for 15 minutes at a time, one hour total, throughout an eight-hour work day; walk for 20 minutes at a time, two-hour total, out of an eight-hour day. And actually, would need to lie down four to five hours during a typical workday.

AR 86-87.

The VE testified that a person with such limitations would not be able to perform any work. AR 87.

### 3.    Medical Records

Plaintiff presented to Spring Valley Hospital Medical Center in November 2008 with complaints of chronic neck and back pain, and headaches. AR 270-272. She informed the doctors that she underwent an anterior cervical decompression fusion at C5-C6 approximately 10 years prior to her admission and that the operation was a complete success. AR 275-276, 278. Upon examination, Plaintiff was diagnosed with chronic neck and upper back pain. AR 273. She was prescribed Xanax, Soma, and Narco for her pain and advised to continue with pain management as an

6

1   outpatient.  AR 275.

2       On March 12, 2010, Plaintiff presented to St. Rose Dominican Hospital.  Her chief complaint

3   was an altered mental state and she felt that she was withdrawing from benzodiazepines and opiates.

4   AR 354.  A history of heavy Xanax abuse was noted.  AR 356.  Plaintiff was treated for withdrawal

5   symptoms and discharged on March 18, 2010.  Plaintiff again presented to St. Rose Dominican

6   Hospital following a motor vehicle accident on May 9, 2011.  She complained of pain at a level of ten

7   in her lumbar and cervical spine.  AR 393.  A cervical spine x-ray demonstrated an anterior fusion at

8   C5-6, but did not show any fractures or soft tissue swelling.  AR 413.  Plaintiff was diagnosed with

9   "neck and back strain" and discharged. AR 394.

10      Plaintiff presented to Don Gregory, M.D. for a follow-up evaluation on May 23, 2011.  She

11  complained of headaches and neck and back pain secondary to the motor vehicle accident.  AR 433.

12  Dr. Gregory noted that Plaintiff "had tenderness to palpation over the posterior neck down into the

13  trapezius muscles bilaterally and up into the occiput . . . Trapezius tenderness positive bilaterally.  She

14  [had] positive tenderness to palpation over the cervical spine paraspinals down to the lumbar

15  paraspinals."  AR 433-434.  Plaintiff was diagnosed with cervical sprain/strain, cervical pain,

16  headaches, thoracic sprain/strain, thoracic pain, lumbar sprain/strain, lumbar pain, trapezius strain, and

17  dental injuries.  AR 434.  She was advised to follow a "conservative rehabilitation" program and

18  continue taking Soma and Percocet.  AR 434.  Lumbar and thoracic spine x-rays taken on May 26,

19  2011 showed "mild degenerative change."  AR 414-415, 618-619.  A lumbar CT scan on July 26,

20  2011 showed no evidence of disc herniation at any level. AR 614-615.

21      Plaintiff treated with Dr. Brian Lee from March 26, 2010 to July 27, 2012 for her fibromyalgia

22  and chronic back pain.  Dr. Lee stated in a brief letter dated May 21, 2012 that Plaintiff had been his

23  patient since March 26, 2010 and that she "suffers from ongoing fibromyalgia and chronic back pain

24  especially in the neck, which is very debilitating."  AR 563.  Dr. Lee also stated in a February 2011

25  residual functional capacity assessment checklist that Plaintiff suffered from fibromyalgia which met

26  the 1990 ACR criteria for the disease.  AR 384-389.  Dr. Lee generally prescribed conservative

27  treatment including  pain medication and physical therapy.  *See* AR 563-587, 843-850.

28      Plaintiff saw Gary J. LaTourette, M.D. on May 19, 2011.  She complained of headaches, vision

7

changes, neck pain, bilateral shoulder pain, upper back pain and low back pain.  AR 501.  She stated that prior to the motor vehicle accident, her back pain was a constant five or six out of ten.  After the accident, her pain was consistently a ten.  AR 504.  On physical examination, Dr. LaTourette noted that there was "tenderness to palpation along the cervical and lumbar spine."  AR 501.  He stated that Plaintiff suffered from cervical sprain/strain, thoracic sprain/strain, lumbosacral sprain/strain, and bilateral shoulder sprain/strain.  AR 502.  He advised her to continue treating with Dr. Lee and return if she chose to undergo Celestone, Xylocaine, and Marcaine injections into her shoulders.  AR 502.

Plaintiff presented to Jamie Warner, D.C. at Green Valley Neck and Back Clinic on May 25, 2011 to address her pain.  AR 636-639.  Dr. Warner stated that Plaintiff had cervical, thoracic, and lumbar strains/sprains and corresponding pain.  AR 638.  He also stated that she suffered from headaches and insomnia secondary to her pain.  Dr. Warner prescribed a home exercise program, endurance training, therapeutic/kinetic exercises, and therapy to improve her pain symptoms.  AR 639.

Plaintiff returned to St. Rose Dominican Hospital on July 15, 2011.  She reported that she fell backwards the day before and had increased lower back and left hip pain.  AR 443.  She had trouble walking due to her low back pain and had "some tenderness to palpation in the paraspinal region of the left low back, approximately located in L5 region, as well as tenderness to palpation in the left buttock."  AR 443-444.  An x-ray of the lumbar spine did not show evidence of an acute fracture.  There was "some mild ecchymosis located over the posterior portion of the left arm[,]" but Plaintiff had full range of motion in her arms.  AR 444.  Plaintiff was diagnosed with low back pain and advised to follow-up with her primary care physician.  AR 444-446.

Plaintiff underwent a lumbar spine MRI on August 15, 2011 which showed evidence of lumbar strain, posterior annular tears at L3-L4 and L4-L5, posterior disk protrusions at the L4-L5 and L5-S1, associated moderate left-sided neural foraminal narrowing at L4-L5, and no significant central canal stenosis.  AR 514.

Dr. LaTourette saw Plaintiff on October 6, 2011 at which time he stated:

> She has fibromyalgia. She has degenerative joint disease of the lumbar spine. She has osteoporosis. She has a plate in her cervical spine from a prior surgery. She has been treating but not very aggressively from a physical therapy point of view.  She has seen Dr. Crivetti for a hip problem and was informed by him that the problem would resolve over

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

the next 6-12 months.  She is getting a little better and with her spinal problems, it is hard to know which is the stressor.

AR 500.

Plaintiff received injections into her left shoulder and was referred to a pain management specialist for pain medications and injections in her cervical and lumbar spine.  AR 500.

Plaintiff was seen by Michael J. McKenna, M.D. at the Surgical Arts Center for a consultation on October 27, 2011.  AR 794-798.  Dr. McKenna stated that Plaintiff suffered from lumbar and cervical sprains/strains and was a candidate for steroid injections to relieve her pain. AR 797-798.  Dr. McKenna performed a steroid epidural injection on November 11, 2011.  AR 792-793.  The injection reduced Plaintiff's pain from a level 10 to a level 3.  AR 792.

Plaintiff underwent a cervical spine MRI on November 18, 2011 which showed that she was status post anterior fusion at the C4 through C6 vertebrae.  There was evidence of cervical strain/torticollis, posterior disc bulges at C3-C4 and C6-C7, right posterolateral disc protrusion at C6-C7, but no significant central canal stenosis or significant neural foraminal encroachment.  AR 518.

Plaintiff continued to treat with Dr. La Tourette until July 27, 2012.  AR 823-829.  Dr. La Tourette administered pain relief injections in her left shoulder on two occasions.  AR 824-828.  The injections temporarily relieved her pain, but it then returned.  AR 825.  Dr. La Tourette stated that Plaintiff was performing "pool exercises as a at home exercise program and [was] under the care of Dr. Brian Lee for her narcotic analgesics."  AR 823.  He noted that she had a full range of motion of both shoulders and had reached maximum medical improvement for the injuries caused by the May 9, 2011 car accident.  He stated that she would require lifelong narcotic analgesic medications.  AR 823.

On February 14, 2012, Plaintiff was treated at St. Rose Dominican Hospital for acute narcotics withdrawal.  AR 755-756.  She was given fluids and sent home with a recommendation to follow-up with her primary care physician, Dr. Brian Lee, for a prescription refill.  AR 756.  Thereafter, Plaintiff treated with Kathleen C. Cansler, M.D. at Spring Valley Medical Center for a Xanax withdrawal seizure on February 19, 2012.  AR 678.  She had run out of Xanax because she had taken it more frequently than prescribed.  The withdrawal seizure caused an acute T12 compression fracture.  Dr. Cansler changed Plaintiff's prescription to BuSpar because it had less side effects.  In addition to the

acute T12 fracture, he also diagnosed chronic back pain and anxiety disorder.  AR 678-679.  Dr. Cansler stated that a "Cat scan of [Plaintiff's] back does not justify the use of those high dose narcotics and with the urine toxicology in the meantime."  AR 678-679.

A thoracic spine MRI performed on February 21, 2012 showed "superior endplate compression fractures at T11 and T12."  AR 688.  A cevical spine MRI on that date showed no fracture or malalignment.  AR 692.  Dr. Cansler completed vertebral augmentation and balloon kyphoplasty on Plaintiff's T11 and T12 vertebrae.  AR 690-691.

Plaintiff saw Frederick Balduini, M.D. at Crovetti Orthopaedic & Sports Medicine on September 9, 2012.  AR 632.  Plaintiff complained of low back and left thigh pain.  She informed Dr. Balduini that she had been unemployed for the past year "secondary to C spine injury and the fibromyalgia as well as documented spinal arthritis."  AR 632.  Dr. Balduini stated that there was no evidence of any significant osteoarthritis involving the hip.  Plaintiff had some disc bulging or slight protrusions in the lumbar spine, but there were no herniations.  AR 633.  Dr. Balduini opined that Plaintiff was not a candidate for surgical intervention for her hip pain and would benefit the most from physical therapy.

### 4.  Assessment Reports

Dr. Brian Lee completed a Residual Functional Capacity Assessment form on February 8, 2011.  Dr. Lee stated that in an eight-hour day Plaintiff could sit for 40 minutes at one time and for a total of two hours; stand for 20 minutes at one time and for a total of one hour; walk for 20 minutes at one time and for a total of one hour; and she would have to recline for 40 minutes at one time.  AR 384.  He stated that Plaintiff could very seldomly lift or carry 20-60 pounds; occasionally lift or carry 5-20 pounds; and frequently lift or carry 0-5 pounds.  She could very seldomly bend, stoop, crouch, kneel, or crawl, and could occasionally climb stairs.  AR 384.  Plaintiff was able to use her hands every day for up to two and a half hours; and could use her hands to repetitively grasp, push/pull, and for fine manipulations.  AR 385.  Plaintiff could only occasionally use her feet for repetitive tasks. Plaintiff was totally restricted from activities involving unprotected heights and exposure to dust, fumes, and gases, and was moderately restricted from being around moving machinery and exposure to marked changes in temperature and humidity.  AR 385.

1    Dr. Lee stated that Plaintiff's pain and fatigue were moderately severe; that her conditions

2    caused a moderate inability to deal with stress; and caused severe depression and/or anxiety.  AR 385.

3    Her prescribed medication caused drowsiness and could impair her concentration.  AR 386.  Dr. Lee

4    opined that Plaintiff would miss work 75% or more of the time due to her conditions.  He also stated

5    that her headaches would frequently interfere with her ability to concentrate.  She would have to

6    alternate between sitting and standing every 15 minutes; and take breaks every 60 minutes that would

7    last 10 minutes.  AR 386.  Dr. Lee concluded that Plaintiff was unable to sustain any type of full-time

8    employment.  AR 386, 389.

9         Jocelyn Fuller, Ph.D. completed a Psychiatric Review Technique on July 7, 2011.  Dr. Fuller

10   stated that Plaintiff's anxiety-related disorders were not severe and could be stabilized with

11   medication.  AR 419, 424.  Plaintiff was mildly restricted in activities of daily living and had mild

12   difficulties in maintaining social functioning and concentration, persistence, or pace.  AR 429.  Jack

13   Araza, Ph.D. completed a Psychiatric Review Technique on December 9, 2011.  She also stated that

14   Plaintiff suffered from non-severe anxiety-related disorder.  AR 542.  Plaintiff was mildly restricted in

15   activities of daily living; had mild difficulties in maintaining social functioning and concentration,

16   persistence, or pace; and did not exhibit any episodes of decompensation.  AR 552.  Tawnya Brode,

17   Ph.D. completed a Psychiatric Review Technique on May 31, 2012.  She stated that Plaintiff had an

18   anxiety-related disorder.  Dr. Brode could not provide a medical disposition, however, because there

19   was insufficient evidence and coexisting nonmental impairments that required referral to another

20   medical specialty.  AR 588, 592.  She stated that Plaintiff was mildly restricted in activities of daily

21   living, but there was insufficient evidence to determine if Plaintiff had other functional limitations.

22   AR 596.

23        State agency medical consultant Navdeep S. Dhaliwal, M.D. completed a Physical Residual

24   Functional Capacity Assessment on July 26, 2011.  Dr. Dhaliwal stated that Plaintiff could

25   occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for

26   about six hours in an eight-hour work day; sit for about six hours in an eight-hour work day; and was

27   unlimited in pushing or pulling ability.  AR 467.  Plaintiff could frequently climb ramps/stairs, balance

28   and stoop, and could occasionally climb ladders, ropes, or scaffolds, crouch, kneel and crawl.  AR

468.  Plaintiff was limited in the ability to reach in all directions, including overhead.  AR 469.

Plaintiff did not have any visual or communicative limitations.  AR 469-470.  Plaintiff was to avoid

concentrated exposure to extreme heat and cold, as well as fumes, odors, dusts, gases, poor

ventilation, etc.  AR 470.  Dr. Dhaliwal stated that "[t]he claimant's allegations are consistent with the

objective diagnosis.  However, the claimant's alleged limitations caused by [] her impairments are out

of proportion with objective findings."  AR 471.  Dr. Dhaliwal concluded that Plaintiff had the

residual functional capacity to perform light level work.  AR 473.

        Plaintiff saw Jerrod M. Sherman, M.D. on November 28, 2011 for a consultative orthopedic

examination.  The examination was requested by the Bureau of Disability Adjudication.  AR 520.

Plaintiff complained to Dr. Sherman of neck, shoulder, and back pain.  He noted that Plaintiff entered

the examination room with a "new-appearing cane which is not necessary in order to ambulate in the

office."  AR 521.  Plaintiff had no muscle spasm or tenderness about the cervical spine.  She had a

100%-normal, pain-free range of motion of both shoulders, elbows, wrists and small joints in the

hands and fingers.  There was no muscle spasm or tenderness about the lumbar spine, and she had

100% normal, pain-free range of motion of both hips, knees and ankles.  AR 521-522.  Dr. Sherman

concluded that Plaintiff was able to sit, stand and walk for six hours during the course of an eight-hour

work day and did not require a cane, brace or assistive device to walk.  AR 523.  He stated that she

could frequently lift 20 pounds and occasionally lift 40 pounds.  Plaintiff had no other restrictions.

AR 523.

        State agency medical consultant Elsie Villaflor, M.D. completed a Physical Residual

Functional Capacity Assessment on December 7, 2011.  Dr. Villaflor stated that Plaintiff could

occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for

about six hours in an eight-hour work day.  Plaintiff could sit for about six hours in an eight-hour work

day.  She had no restriction in pushing or pulling.  AR 529.  Plaintiff could frequently balance and

stoop, occasionally kneel, crouch, and climb ramps or stairs, and could never crawl or climb ladders,

ropes or scaffolds.  AR 530.  Plaintiff was limited in her ability to reach in all directions, including

overhead.  AR 531.  She should avoid concentrated exposure to extreme heat and cold, to fumes,

odors, dusts, gases, and poor ventilation, and hazardous machinery.  AR 532.  Dr. Villaflor concluded

that the "[o]verall allegations [were] disproportionate to the objective findings." AR 533.

Dr. Gary J. La Tourette completed a Residual Functional Capacity form on September 26, 2012. He stated that Plaintiff could sit for 40 minutes at one time and for a total of two hours in an eight-hour day. She could stand for 20 minutes at one time for a total of two hours; could walk for 5 minutes at one time for a total of 40 minutes; and would have to recline for 40 minutes at one time for a total of two hours. AR 840. Plaintiff could very seldomly lift or carry10-60 pounds, occasionally lift or carry 5-10 pounds, and frequently lift or carry 0-5 pounds. She could very seldomly bend, stoop, crouch, kneel, or crawl, and could occasionally climb stairs. AR 840. Plaintiff was able to use her hands every day for up to two and a half hours out of an eight hour work day, but she could not use her hands for repetitive work related activities such as grasping, pushing/pulling, or fine manipulations. AR 840-841. Plaintiff could never use her feet for repetitive tasks. She was totally restricted from activities involving unprotected heights and being around moving machinery. She was moderately restricted from exposure to marked changes in temperature and humidity, and was not restricted from exposure to dust, fumes and gases. AR 841.

Dr. La Tourette stated that Plaintiff's conditions caused severe pain, moderately severe fatigue, and a moderately severe inability to deal with stress which would continuously cause her to lose concentration, persistence and pace while performing daily activities. AR 841. Her medications also caused drowsiness, nausea, impaired concentration, and irritability. AR 842. Like Dr. Lee, Dr. La Tourette stated Plaintiff would miss work 75% or more of the time due to her conditions. He also stated that she met the 1990 ACR criteria for the diagnosis of fibromyalgia and would be unable to sustain any type of full-time employment. AR 842, 851.

Dr. La Tourette further stated in a letter dated September 26, 2012 that due to "her fibromyalgia, her cervical fusion, and her disc pathology in her cervical and lumbar spine, she is unable to sustain full time work in any occupation at the present time. She has been unable to sustain full time work of any kind since her treatment with us began on 05/19/11." AR 853. Dr. La Tourette referenced the November 2011 cervical and lumbar spine MRIs which showed a posterolateral disc protrusion at C6-7; anular tears at L3-4 and L4-5; disc protrusion at L4-5 and L5-S1; and neural foraminal narrowing at L4-5. He also referenced an MRI of Plaintiff's hip which showed a partial tear

of the distal abductor tendon at the insertion of the greater trochanter.  AR 853.

### 5. Affidavits of Plaintiff's Family and Friends

Plaintiff's sister, Colleen McDonald submitted a letter in which she stated that she had witnessed Plaintiff go from bad to worse.  Plaintiff's days were filled with pain and angst and she could not partake in even simple activities because they were excruciatingly difficult for her.  AR 249.  Ms. McDonald stated that Plaintiff was unable to walk for a long period of time and she walked "with a stance of someone at least 30 years her senior."  AR 249.  She also stated that Plaintiff's neck and back disabilities were affecting other parts of her body and that every time she spoke with Plaintiff, another ailment arose.  AR 249.  Plaintiff's son-in-law George Medina also submitted a letter on her behalf.  AR 250.  Mr. Medina stated that Plaintiff's life was very difficult because of her severe neck, back, and fibromyalgia pain.  AR 250.  She needed help getting out of bed in the morning, going to the restroom, showering, and walking.  She could not stand for more than 10 minutes at a time.  Plaintiff's pain had caused her to become depressed and she was no longer the same person. AR 250.  A friend of Plaintiff also submitted a letter on her behalf. [2]  AR 251. The friend stated that she had known Plaintiff since she worked at Republic Services.  She observed Plaintiff climb the corporate ladder to high management and how hard Plaintiff pushed herself to get there.  AR 251.  She witnessed Plaintiff's health decline and by the time Plaintiff left her job she could barely use her arms due to her neck, spinal, and fibromyalgia pain.  Plaintiff's anxiety had also increased, but despite the pain and anxiety she continued to have a good outlook.  AR 251.

### C. The ALJ's Decision

In reaching his decision that Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f).  AR 39-42. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 11, 2009.  AR 38.  Second, he found that Plaintiff had severe impairments including "fibromyalgia; degenerative disc disease of the cervical spine, status-post fusion; hypertension; status-post myocardial infarct; obesity; and degenerative disc disease of the lumbar

---

[2] The document in the Administrative Record cuts off the name of Plaintiff's friend.

spine." AR 38.  The ALJ noted that Plaintiff had a history of alleged mental symptoms (e.g. sleep problems, crying spells, anxiety, and feelings of worthlessness), but found that the "evidence as a whole does not support the presence of any severe mental impairment." AR 39.  Plaintiff also suffered from an acute T12 fracture in February 2012, but that condition had not and could not be expected to meet the 12-month duration requirement per 20 C.F.R. §§ 416.909 and 420.1509.  AR 39.  The ALJ found that Plaintiff's impairments did not meet and were not medically equivalent to any condition listed in Appendix 1, Subpart P, of, of 20 C.R.F. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  AR 39.

Prior to step four of the analysis, the ALJ found that:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional restrictions: occasional climbing of stairs and ramps; no climbing ladders; frequent balancing and stooping, occasional kneeling and crouching; no crawling; occasional exposure to airborne pollutants (e.g. chemicals, dust, and fumes); occasional exposure to temperature extremes; no exposure to hazards (e.g. heights and dangerous moving machinery); and occasional overhead reaching bilaterally.

AR 39.

The ALJ stated that Plaintiff's complaints concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the foregoing residual functional capacity assessment.  AR 40.  The objective medical evidence supported the conclusion that Plaintiff was able to sustain light work with certain limitations.  The ALJ gave the State Agency doctors' opinions great weight, noting that they were familiar with the Social Security's disability program and had the opportunity to review the medical evidence prior to rendering their opinions.  AR 40.  He did not give "controlling weight" to the opinions of Plaintiff treating physicians. The ALJ stated that their opinions were inconsistent with the objective medical evidence, reflected patient advocacy, and appeared to be largely based on Plaintiff's subjective complaints which were not credible.  AR 42.

The ALJ noted Plaintiff's history of cervical fusion surgery at C5-6 in 1998 and that she was involved in a motor vehicle accident in May 2011 which may have exacerbated her pre-existing fibromyalgia and cervical and lumbar spine problems.  AR 40-41.  However, Plaintiff only received

conservative treatment for these problems and there was no evidence that she needed further neck or back surgery.  AR 41.  Plaintiff also suffered a fall in July 2011 and reported lower back pain.  There were no significant clinical findings, however, aside from tenderness to palpation in the paraspinal and left buttock regions.  The ALJ stated that Plaintiff was advised to increase her physical activity as tolerated in September 2011, which cast doubt on the credibility of her complaints of physical incapacitation.  AR 41.

The ALJ stated that the medical records consistently indicated that Plaintiff had the ability to ambulate independently without an assistive device despite her statements that she had difficulty walking.  AR 41.  Although Plaintiff told Dr. Sherman that she used a cane to ambulate, she had  a "new appearing cane" at the time of her November 2011 examination, and Dr. Sherman found that she did not need the cane and  could easily walk on her heels and toes.  The ALJ also noted Dr. Sherman's observation that Plaintiff had a 100% range of motion and that there was no evidence of neurologic or mechanical deficit. AR 41.

The ALJ stated that several instances in the record reflected negatively on Plaintiff's overall credibility.  The record suggested a history of Xanax abuse or overuse that led to Plaintiff having an altered mental status and withdrawal seizures.  The record did not support Plaintiff's claims of disabling headaches.  AR 41.  The ALJ noted that Plaintiff testified that she was laid-off from her last job, but made no mention that her lay-off resulted from her inability to engage in her work duties due to impairments.  "The fact that the claimant's impairments did not cause her last job to end without objective evidence of significant worsening afterwards, leads to the supposition that, were she not layed-off, she would still be working at her last job."  AR 41.

The ALJ found at step four of the sequential process that Plaintiff was capable of performing her past relevant work as an office manager at Republic Services, collection clerk, casino dealer, and office manager of a dog grooming establishment.  The ALJ therefore concluded that Plaintiff was not disabled from September 11, 2009 through the date of his decision.  AR 42.

## DISCUSSION

### I.      Standard of Review.

A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's

findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)); *see also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

17

## II.     Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:   (a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).  The claimant has the initial burden of proving disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform a significant number of other jobs that exist in the national economy.  *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007).  Social Security disability claims are evaluated under a five-step sequential evaluation procedure.  *See* 20 C.F.R. § 404.1520(a)-(f).  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary.  20 C.F.R. § 404.1520(a).  The ALJ correctly set forth five steps in his decision, AR 37-38, and they will not be repeated here.

## III.     Whether the ALJ erred in rejecting the opinions of Plaintiff treating physicians and in rejecting the credibility of Plaintiff's statements regarding the severity of her symptoms.

In reaching his decision that Plaintiff was not disabled, the ALJ gave "great weight" to the opinions of the State Agency physicians who reviewed Plaintiff's medical records and stated that she had the residual functional capacity to perform light work.  AR 40.  The ALJ stated that he did not give "controlling weight" to the opinions of Plaintiff's treating physicians.  He did not state, however, what, if any, weight he gave to their opinions.

As a general rule, more weight should be given to the opinion of a treating physician than to the opinion of physicians who do not treat the claimant.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014);  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The opinion of an examining physician is also generally entitled to greater weight than that of a non-examining physician.  *Id.*, at 1012, citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  The weight afforded

to a non-examining physician's opinion depends on the degree to which he provides supporting explanation for his opinions. *Id.* The Commissioner's regulation, 20 C.F.R. § 404.1527(c)(2), states that a treating physician is likely to be "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultive examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). If the treating physician's opinion on the nature and severity of the claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record, it will be given controlling weight. *Id.*

Even if the treating physician's opinion is not given controlling weight, the ALJ is required to consider certain factors in determining the weight to be given to the opinion. 20 C.F.R. § 404.1527(c)(2). These factors include (i) the length of the treatment relationship and the frequency of examination and (ii) the nature and extent of the treatment relationship. *Id.* In evaluating the opinions of treating, examining and nonexamining physicians, the ALJ should consider the extent to which the opinion is supported by relevant evidence, particularly medical signs and findings; the extent to which the opinion is consistent with the record as a whole; whether the physician is a specialist opining within the area of his specialty; and other factors, including the physician's familiarity with Social Security disability programs and their evidentiary requirements. 20 C.F.R. § 404.1527(c)(3)-(6).

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, the ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d at 1012. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Id.*, quoting *Orne v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007). To satisfy the substantial evidence requirement, the ALJ should set forth a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretations thereof, and make findings. *Id.*, citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct.'" *Id.*

The ALJ is not bound by a treating physician's opinion that a patient is unable to work. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).  While a treating physician's evaluation of a patient's ability to work may be useful in the disability determination, a treating physician ordinarily does not consult a vocational consultant or have the expertise of one.  "An impairment is a purely medical condition.  A disability is an administrative determination of how an impairment in relation to education, age, technological, economic, and social factors, affects the ability to engage in gainful activity."  The law reserves the disability determination to the Commissioner.  *Id.* at 884, citing 20 C.F.R. § 404.1527(e)(1).  *See also Kibble v. Comm'r*, 584 Fed.Appx. 717, 719 (9th Cir. Sept. 2, 2014) (unpublished memorandum).

The ALJ did not provide a separate analysis of the opinions of Plaintiff's treating physicians Dr. Brian Lee and Dr. Gary LaTourette.  Instead, he briefly discussed their opinions collectively and stated that they were "inconsistent with the objective medical evidence as cited above, and reflect patient advocacy."  The ALJ stated that "the treating physicians based their functional assessments on little beyond the claimant's subjective reports, and as noted above, there are inconsistencies in the record that diminish the credibility of the claimant's reports of pain and limitation."  AR 42.  Although the ALJ identified fibromyalgia as a severe impairment, he only discussed it briefly in his analysis of Plaintiff's residual functional capacity wherein he noted that the May 2011 car accident "may have exacerbated her existing fibromyalgia and lumbar spine problems."  AR 40-41.  He did not discuss the fact that Dr. Brian Lee and Dr. La Tourette based their assessments of the severity of Plaintiff's chronic pain and limitations on the fact that she suffered from fibromyalgia, as well has from degenerative conditions of the cervical and lumbar spine.

In *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004), the court noted that the cause of fibromyalgia is unknown.  There is no cure for the disease, and it is poorly-understood within much of the medical community.  The court held that the ALJ erred in discounting the opinions of the plaintiff's treating physicians; relying instead on his disbelief of her testimony and his misunderstanding of fibromyalgia.  In particular, the ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement.  In *Rounds v. Commissioner Social Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015), the court noted that the Commissioner adopted SSR 12-2p on July

1   25, 2012 which designates two separate sets of diagnostic criteria than can establish fibromyalgia as a

2   medically determinable impairment.  These criteria were published by the American College of

3   Rheumatology ("ACR") in 1990 and 2010.  The ALJ in *Rounds* considered only the 1990 ACR

4   diagnostic criteria in rejecting the diagnosis of fibromyalgia as the cause of plaintiff's symptoms.  The

5   court stated, however, that many of plaintiff's symptoms– cognitive and memory problems, poor

6   sleep, depression, anxiety, headaches, fatigue, dizziness and nausea–appeared to fit the 2010 criteria

7   better than the 1990 criteria.  The court therefore remanded the case to the agency to determine

8   whether the plaintiff met the criteria for fibromyalgia under the 2010 ACR criteria.

9        In this case, the ALJ did not explicitly consider the diagnosis of fibromyalgia, and the signs

10   and symptoms associated with that disease, in evaluating the opinions of Plaintiff's treating physicians

11   or the credibility of Plaintiff's complaints of chronic neck and back pain, headaches, fatigue, nausea,

12   anxiety and depression.  Like the medical evidence in *Rounds*, the evidence in this case indicates that

13   Plaintiff displayed fibromyalgia symptoms identified in the 2010 ACR criteria and in SSR 12-2p

14   (II)(B).  Dr. Lee also stated that Plaintiff met the 1990 ACR criteria for fibromyalgia which is based,

15   in part, on finding at least 11 positive tender points on physical examination.  *See* SSR 12-2p (II)(A).

16   The ALJ's failure to address the treating physician's opinions regarding fibromyalgia and its

17   debilitating effects on Plaintiff requires the conclusion that his rejection of their opinions is not

18   supported by specific and legitimate reasons.

19        In evaluating the credibility of a claimant's testimony regarding the severity of her pain and

20   other symptoms, the ALJ is required to follow a two-step analysis.  First, the ALJ must determine

21   whether the claimant has presented objective medical evidence of an underlying impairment which

22   could reasonably be expected to produce the pain or other symptoms alleged.  *Garrison v. Colvin*, 759

23   F.3d at 1014; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  If the claimant satisfies

24   the first step, and there is no evidence of malingering, then the ALJ can only reject the claimant's

25   testimony about the severity of her symptoms by offering specific, clear, and convincing reasons for

26   doing so.  *Id.* at 1014-15, citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) and *Robbins v.*

27   *Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

28        In this case, the ALJ recognized at step one of his analysis that Plaintiff's alleged inability to

1   work was due, in large part, to her lumbar and cervical degenerative disc disease, fibromyalgia and

2   daily headaches. AR 40.  The ALJ's finding that Plaintiff's statements regarding the severity of her

3   symptoms were not credible was based, in part, on the lack of "objective" medical findings and the

4   fact that she generally received only conservative medical treatment, such as pain medication and

5   injections.  The ALJ's failure to adequately address the fibromyalgia diagnosis undermines the

6   legitimacy of his reasons for rejecting Plaintiff's credibility.  Under SSR 12-2p, "objective" findings

7   of fibromyalgia may be based on the presence of trigger points, which Dr. Lee indicated he found, or

8   on a collection of symptoms such as widespread chronic pain, fatigue, cognitive or memory problems,

9   sleep disorders, and depression and anxiety disorder, which the medical records indicate Plaintiff

10  displayed.  The fact that an individual suffers from fibromyalgia does not mean that her symptoms are

11  necessarily debilitating.  In pointing to the lack of "objective clinical findings" to support Plaintiff's

12  complaints of severe symptoms, however, the ALJ ignored the nature of fibromyalgia.  *See Benecke,*

13  *supra.*  The fact that there is no identifiable cure for fibromyalgia also undermines the ALJ's finding

14  that the conservative medical treatment Plaintiff received is inconsistent with her complaints of severe

15  pain, weakness, fatigue, depression and anxiety.  Plaintiff was treated with pain and anti-anxiety

16  medication, pain-relief injections and occasional physical therapy.  There is no indication that some

17  other unspecified, but more aggressive form, of medical treatment would have ameliorated Plaintiff's

18  symptoms if they were as severe as she alleged.   The record showed that Plaintiff regularly sought

19  medical treatment for her symptoms.  There is no evidence that she failed to follow a recommended

20  course of treatment.

21        The ALJ also stated that Plaintiff made no mention in her testimony that her lay-off from her

22  last job, Republic Services, was the result of her inability to engage in her work duties because of her

23  alleged impairments.  The ALJ therefore surmised that Plaintiff might still be working if she had not

24  been laid off.  AR 41.  Plaintiff testified, however, that prior to being laid-off by Republic Services,

25  she was having problems working.  She stated that "[t]he neck, and the walking, and just keeping up

26  with - - I was leaving like two days out of the week, going home early and not staying.  And every

27  month I was going and having shots put in my neck but, obviously, they weren't helping."  AR 70.

28  She was asked if she thought that her missing time from work was part of the reason she was laid off.

1    She responded: "I think it had a lot to do with it." AR 70. Thus, the ALJ's reason for rejecting

2    Plaintiff's credibility on this ground was erroneous.

3        The ALJ's other reasons for rejecting the credibility of Plaintiff's testimony regarding the

4    severity of her symptoms have somewhat greater legitimacy. The ALJ pointed out the inconsistency

5    between Plaintiff's statement that she used a cane to ambulate and Dr. Sherman's physical

6    examination finding that she could walk easily on her heals and toes which led him to conclude that

7    that she did not need a cane. Dr. Sherman and other physicians also noted that Plaintiff had full range

8    of motion in her extremities. AR 41. The ALJ also pointed out Plaintiff's history of Xanax abuse.

9    On the one hand, such medication abuse might indicate that Plaintiff's testimony regarding the

10   severity of her symptoms was unreliable. On the other hand, Xanax abuse might suggest the severity

11   of Plaintiff's underlying anxiety and her inability to perform work or other activities of daily living.

12        On balance, the ALJ's failure to adequately address Plaintiff's fibromyalgia as a cause of her

13   allegedly severe pain and other symptoms requires the conclusion that his credibility finding is not

14   supported by clear and convincing reasons. The ALJ's erroneous statement about Plaintiff's testimony

15   regarding the termination of her employment further supports the conclusion that his credibility

16   determination was not reasonable. Because the ALJ also did not provide legitimate reasons for

17   rejecting the opinions of Plaintiff's treating physicians, reversal of his decision is required.

18      **IV.**    **Whether this case should be remanded for an award of benefits or for further**
          **administrative proceedings.**

19

20        The Ninth Circuit has established a three-part credit-as-true standard which must be satisfied in

21   order to remand a case to the Social Security Administration with instructions to calculate and award

22   benefits. The test requires the court to find that (1) the record has been fully developed and further

23   administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally

24   sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the

25   improperly discredited evidence was credited as true, the ALJ would be required to find the claimant

26   disabled on remand. *Garrison v. Colvin*, 759 F.3d at 1020, citing *Ryan v. Commissioner of Social.*

27   *Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir.

28   2007); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

Cir. 2004); and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). *Garrison* states that it may be an abuse of discretion not to remand with direction to make payment when all three conditions are met. The court stated, however, that the rule envisions some flexibility and the case should be remanded for further proceedings if an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Id.* at 1020-21. More recently in *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014), the court stated that even when the elements of the credit-as-true rule are present, the decision to remand for additional evidence or simply to award benefits is in the discretion of the court.

In this case, all three parts of the credit-as-true test are arguably satisfied. As discussed above, the ALJ clear failed to provide legally sufficient reasons for rejecting the credibility of Plaintiff's testimony or the opinions of her treating physicians regarding the severity of her impairments. If Plaintiff's testimony was credited as true and her treating physician's opinions were accorded greater weight than those of the examining and reviewing physicians, Plaintiff would be entitled to an award of benefits. It is more questionable, however, whether the first part of the test has been met. Although Dr. Lee and Dr. La Tourette stated that Plaintiff has fibromyalgia and suffered from debilitating symptoms, neither physician provided detailed narrative summaries of his findings with respect to the fibromyalgia diagnosis or the impact that the disease had on Plaintiff. Therefore, while the ALJ failed to properly evaluate Plaintiff's fibromyalgia and the opinions of her treating physicians, the record is not clear that Plaintiff's fibromyalgia symptoms are so severe as to disable her from performing even sedentary work. Other evidence in the record, such as Plaintiff's full range of motion and her use of cane when none is arguably required, casts some doubt on the degree to which her symptoms are, in fact, debilitating. The Court therefore finds that there is serious doubt, based on the record as a whole, as to whether Plaintiff is disabled. Remand for further hearing is therefore appropriate.

## CONCLUSION

The ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Plaintiff's treating physicians. The ALJ also erred in rejecting the credibility of Plaintiff's testimony regarding the severity of her symptoms, without explicitly considering those symptoms in light of the diagnosis of fibromyalgia. The ALJ's failure to address pertinent medical evidence was not harmless

error because adequate consideration of that evidence could have affected the ALJ's ultimate disability determination.  Remand is therefore appropriate.  The record, as a whole, raises serious doubt as to whether Plaintiff is disabled from performing sedentary work.  This weighs in favor of remanding this case for further administrative proceedings.  Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and Remand (ECF No. 16) be **granted**, and that the Defendant's Cross Motion to Affirm (ECF No. 19) be **denied**, and that this case be remanded to the Social Security Administration for further proceedings as recommended.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 14th day of September, 2016.

*George Foley Jr.*

GEORGE FOLEY, JR.
United States Magistrate Judge

25